JOSEPH N. BURCH and THOMAS MUNDELL *vs.* STATE, use of McPHERSON and WIFE.—*December*, 1832.

Where the personal estate of an intestate consists of slaves, a distributee cannot recover from a delinquent administrator and his sureties, both the appraised value, and the increase, and hire of such slaves, from the time of granting letters or appraisement. He may claim their appraised value and interest thereon, or their increase and hire up to, and real value at, the time of bringing his action. But the pleadings must disclose which course he elects to take.

By recovering the value of the slaves, the distributee casts upon the administrator, the title to the property from the period to which the recovery relates.

Where a defendant filed an account in bar, charging the plaintiff with board, clothing, and expenses, to which *non assumpsit* and limitations were pleaded, the plaintiff cannot at the trial, for the purpose of showing that the defendant is entitled to no credit for such matters, prove that the defendant entered upon, and received the rents and profits of the plaintiff's real property.

The rents and profits of land received by a mere trespasser, cannot form the basis of a set-off to a claim founded upon contract, made by such trespasser.

The rule that a trespasser, who enters upon an infant's real estate, shall be charged as a guardian, is a fiction of a court of equity only.

A set-off to be available as such, must always be pleaded, or filed in bar.

APPEAL from *Prince Georges* County Court.

This was an action of *Debt*, instituted by the appellee against the appellant, and one *Thomas N. Mudd*, who died pending the suit, on the bond of *Burch*, one of the appellants, as administrator of *Walter S. Parker*. The bond bears date on the 19th of May, 1817, and is in the penalty of $20,000.

The defendants pleaded general performance by the administrator, *Burch*.

The replication alleged, that *Parker* died intestate, leaving a widow and eight children, of whom *Elizabeth*, the wife of *McPherson*, was one. That letters of administration on his estate were granted to *Burch*, who returned an inventory of his personal estate, into the proper office, amounting to $14,324 85, and after obtaining credit for sundry disbursements, there remained in his hands a balance of

$10,893 19, for distribution among the widow and children, the widow being entitled to one-third. That the increase, earnings, and hire, of the negro slaves, contained in the inventory returned as aforesaid, which were received and possessed by the said administrator, but with which he has not charged himself, amounted to the further sum of $10,000, which is likewise to be divided between the said widow and children of the intestate. That the residue of the personal estate of said *Parker*, including the increase, and hire of the negro slaves aforesaid, after all payments, &c. and widow's thirds deducted, amounted for the said *Elizabeth's* proportion, to the sum of $1741 52, which the said administrator, though often required, had refused to pay, &c.

The defendants rejoined, 1. That there did not remain in the hands of the administrator the sum of $1741 52 due the said *Elizabeth*, as alleged in the replication; and 2. Payment by the administrator.

Issues were joined upon the defences set forth in the rejoinder.

The defendants also filed an account in bar, charging *Elizabeth*, with board, clothing, and other expenses, furnished by the administrator, from the death of her father, in 1817, amounting to the sum of $1200. To this account in bar, the plaintiffs pleaded *non assumpsit*, and limitations.

1. At the trial the plaintiff offered in evidence the inventory of the personal estate of the deceased, returned as aforesaid, by the administrator, amounting to $14,324 85, and the first account settled by him with the Orphans Court, on the 2d of December, 1818, by which there appeared a balance of $10,893 19, remaining in his hands. The defendants then read to the jury several subsequent accounts, passed by the administrator with the court, in which he had charged himself with the proceeds of crops, made on the lands of the intestate, the last of which accounts, was on the 23d of October, 1829, reducing the balance to $4,477 14. The plaintiff thereupon offered to

prove, what was the annual value of the negroes, contained in the inventory, subsequently to the appraisement, and claimed in this action the hire of said negroes, from the date of the granting of the letters of administration to *Burch*, until the time of the institution of this suit. The defendant objected to this proof and claim, and contended, that if the plaintiff was to receive the value of the negroes, at the time of the appraisement, and according to the appraisement, he could not claim the hire of the negroes afterwards. The court, (STEPHEN, Ch. J., and KEY, A. J.,) admitted the evidence, and instructed the jury, that under the pleadings in the cause, the plaintiff was entitled to recover, not only the proportion of said estate, to which *Elizabeth* was entitled, according to said settlement, but might also claim for the hire of the negroes aforesaid, from the time of the grant of the letters of administration, up to the institution of this suit. The defendants excepted.

2. The defendant having offered evidence in support of his account in bar, the plaintiff, for the purpose of showing that the defendant was entitled to no credit for the same, proved that *Walter S. Parker* died seized of a real estate which descended to his children. That the defendant took possession of the same, cultivated it, and received the crops thereof, and contended, that the proceeds of said real estate, were to be applied to reduce the claim of the defendant, as stated in his account in bar. The defendant objected, and insisted, that as in this action the plaintiff claimed only the personal estate, and had called on the administrator to account for the same, he could not, in support of his pleas, and to extinguish or reduce the account in bar, offer any proof relative to her claim, against the said *Burch*, for the real estate. But the court admitted the evidence, and instructed the jury, that if they should be opinion, that the profits of said real estate had been received by the said *Burch*, and applied to the maintenance of the plaintiff, and her brothers and sisters, her share was a legal set-off against the claim of the defendant, stated in his account in bar. The

defendants excepted, and the verdict and judgment being for the plaintiff, they brought the case by appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, ARCHER, and DORSEY, J.

*A. C. Magruder*, and *Stonestreet*, for the appellants, contended.

1. Although the plaintiff below, might have a right to claim, at *their election*, either the value of the property at the time of its original appraisement, with interest thereon, from the time when the settlement and distribution ought to have been made—or might have sued for the non-delivery to the plaintiff, of the negroes, and other property, at a subsequent period, and the non-payment of the hire of the negroes to that period, yet having charged the administrator in the replication, and the proof to the jury, with the value of the personal estate at the time of taking the inventory, as assets converted then into cash, the plaintiff could claim no hire for the negroes, as a part of these assets converted into cash, subsequently to the appraisement; but must be contented with her share of the value of the assets, with interest thereon, from the time, when by law, such sum of money ought to have been paid. 2. That the breach in the replication, only authorized the plaintiff to claim a share in money, and according to the appraisement with interest, and amounted to an abandonment of her claim to be paid for the hire of the negroes, to which she would have been entitled, had a different breach been laid. 3. The defendant's claim for board, &c. of the plaintiff *Elizabeth*, was properly to be allowed in the settlement of the personal estate, and the plaintiff below had no right in the trial of this suit upon the administration bond, to set up, and to have adjusted any claim, which she might have against the individual who was the administrator, on account of the real estate, whether such claim existed against him as guardian of the distributee, or as a tresspasser. 4. But if such a claim could

be set up at all, notice, at all events, should have been given the defendant.

*Johnson,* for the appellee.

1. The replication only claims the plaintiff's share of the property, as appearing to be due by the settlement with the Orphans Court, and the hire, &c. of the negros received by the administrator, with which he had not charged himself, and the instruction of the court to the jury goes no farther. *Hall and Gibson,* 2 *Harr. and Johns.* 485.

2. It is not alleged by the defendant, that the amount charged the plaintiff, *Elizabeth,* in his account in bar, was any part of the personal estate.

*Burch* was in possession of two funds belonging to the plaintiff. One arising from the personal estate, the other from the realty; and as he did not apply the sum mentioned in his account in bar, to the extinguishment of the personal debt, the plaintiff had a right to say that he should take his satisfaction out of the real fund. But the instruction of the court is entirely free from any objection, as it simply says, that the jury must believe that the profits of the real estate were received, and actually applied to the support of the plaintiff, *Elizabeth;* and as the objection of the defendant, was not, that there was no evidence in support of the opinion, the court will presume that there was evidence. *Barnes vs. Blackstone,* 2 *Harr. and Johns.* 376. The instruction goes no farther than to say, that the defendant shall not be allowed his account in bar, if the jury believe he had paid himself out of the proceeds of the real estate. He further insisted, that when the defendant took possession of the plaintiff's land, he became in law her guardian. *Drury vs. Conner,* 1 *Harr. and Gill,* 220. *Gibbs vs. Clagett,* 2 *Gill and Johns.* 14. *Hungerford vs. Bourne,* 3 *Gill and Johns.* 131.

Dorsey J., delivered the opinion of the court.

The plaintiff below, by the replication, did not allege, as the *gist* of his action, the failure of the defendant to deliver

in *solido*, the just proportion of the personal estate of the deceased; but elected to claim the value thereof, as appraised in the inventory, and as appearing to be due on the face of the accounts passed by the administrator with the Orphans Court; and claimed also, a large sum of money, as the earnings and hire of the negro slaves, not accounted for in said settlement. This is a true exposition of the plaintiff's demand, as exhibited on the face of the replication. At the trial, the plaintiff having proved the balance appearing due by such settlement, offered to prove the annual value of the negroes subsequent to the appraisment; claiming their hire, from the date of the letters of administration until the institution of this suit.

To this proof and claim, the defendants objected, and contended, "that if the plaintiff was to receive the value of the negroes, at the time of the appraisement, and according to the appraisement, he could not claim the hire of the negroes afterwards." But the court instructed the jury, that under the pleadings in the cause, the plaintiff was entitled to recover, not only the proportion of the estate to which the said *Elizabeth* was entitled, according to the settlement, but the hire of the negroes with which the defendant was charged in said settlement, from the granting of the letters of administration to the commencement of this suit.

The hire of the negroes, with which the administrator had debited himself, was continued down to the year 1827, inclusive. This instruction of the County Court is not marked with that perspicuity and precision which would preclude all question or doubt, as to what they meant to decide. If they intended to direct the jury, that the proportion of the estate to be recovered, was damages for the non-delivery in *solido et genere*, then they were in error, because the pleadings in the cause did not warrant such a recovery. If their meaning was, that such proportion should be that which appeared due by the settlement, (which embraced the appraised value of the negroes,) then the court erred, because the the defendant is not liable for both the

appraised value, and hire of the negroes.    A plaintiff, who in a case like the present, in consequence of the delinquency of the administrator, in not settling up and distributing the estate in a reasonable time, charges him in a suit on the administration bond, with the appraised value of the property, can only recover it with interest thereon.    If the distributee elects to claim the hire, or earnings of the negroes, not distributed nor sold, and accounted for accordingly, he must allege, as part of the *gravamen* of his action, not the non-payment of their appraised value, but their non-delivery. By recovering such their value, he casts upon the administrator the title to the property, from the period to which the recovery relates; and from that time can have no claim to the hire or earnings.    Upon these principles, the rights of the parties are preserved, and justice is administered to all. Every reasonable advantage is extended to the distributee, by affording him the privilege of electing his remedy.    To permit him to claim all the profits arising from the estate, and then throw it upon the hands of the administrator at its appraised value, it may readily be imagined, would be fraught with results of the grossest injustice.    As for example, the estate might consist of negroes, who, being in the prime of life, might be hired out until their value was reduced more then fifty *per cent.*    Could it be insisted, that under such circumstances, the distributees might exact from the administrator, the inventory appraisement of the negroes, and all their subsequent earnings.    The law would not tolerate a proceeding so glaringly unjust.    *Edelin vs. Jackson*, determined by this court at June term, 1830, has been referred to as warranting the opinion of the County Court.    But the decision there does not in the slightest degree conflict with that now given in this court.    The only questions there adjudicated were, that the hire of the negroes received by the administrator was assets in his hands; that it could not be recovered at law by a distributee, unless the issues were so formed as to embrace it.

That in the case then under consideration it was not cover-ed by the issue.

This discloses our view of the first bill of exceptions. The second exception presents a different question. The defendant having filed an account in bar, charging the board, clothing, and expenses of *Elizabeth*, (for a number of years after the intestate's death,) to which *non assump-sit* and limitations were pleaded; the plaintiff at the trial offered evidence, that the intestate died seized of a real es-tate, which descended to his children, of whom the said *Elizabeth* was one, and that the defendant, *Burch*, took pos-session of and cultivated the same, and received the crops therefrom.

The object in offering this testimony, and the grounds upon which it was objected to, are stated in the bill of ex-ceptions. The court admitted the proof, and in the pro-priety of their so doing, we cannot concur with them in opinion. There was nothing in the pleadings to which such testimony was applicable.

If such a defence existed to the account in bar, it could not have been made in the manner attempted, without sub-verting the whole doctrine of set-off, and filing accounts in bar, in courts of law, as practiced in this State. It could not have been anticipated by the defendants, nor could they be expected to have come prepared to meet it. With as much propriety could the defendants' account have been given in evidence on the trial, without being pleaded or filed in bar, as could the testimony thus offered by the plain-tiff. But we wish not to be understood, as intimating that the plaintiff could have sustained the defence attempted to be made, even though pleaded by way of set-off, or filed as an account in bar. In occupying the real estate, there is nothing in the evidence in the cause that presents the de-fendant, *Burch*, in any other character than that of a mere trespasser, except the charges he has made against himself in his settlements before the Orphans Court. But these entries are no evidence of any contract to account for, or

apply the profits in any other mode than that pursued by the defendant.    It has been urged, that *Elizabeth* was an infant, and, therefore, although *Burch* was, in fact, a trespasser, yet, in contemplation of law, he must be looked upon as her guardian, and account for the profits of her real estate in that character.    The brief answer to this suggestion is, that the evidence of infancy does not appear in the record, and if it did, that this salutary fiction of law does not extend beyond the confines of chancery jurisdiction.

But conceding that the court were right in admitting the evidence, their instruction was clearly erroneous, as they submitted to the jury the finding of a fact, of which no testimony legally sufficient for that purpose, had been adduced before them.    They authorized them to find that the profits of the real estate had been applied to the maintenance of *Elizabeth*, her brothers and sisters, when not a *scintilla* of proof had been offered to show such application. On the contrary, instead of thus applying them, the accounts settled by the administrator with the Orphans Court, showed that he had charged himself with them as part of the personal estate, and had either paid them away in satisfaction of debts and disbursements, or held them still in his hands, as part of the general balance of the intestate's personal estate.

If, however, there was proof of such application, the instruction given by the court for another reason could not be supported.    The jury were told " that if they were of opinion that the profits of the real estate had been received by said *Burch*, and applied to the maintenance of the plaintiff, and her brothers and sisters, her share was a legal set-off against the claim of the defendant, stated in his account in bar."    Should it then have appeared to the jury that nine-tenths of *Elizabeth's* share had been applied to the maintenance of her brothers and sisters, and but one-tenth to that of herself, yet under the court's direction the whole amount of her share must have been deducted from the defendant's account in bar.    The word " set-off," we do not understand as having been used by the court, in its legal or

technical sense, but as synonymous with abatement or re-
duction.   A set-off, to be available as such, must always be
pleaded.

Dissenting from the County Court on both of the bills of
exceptions, we reverse their judgment.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**